Filed 11/15/21  In re V.P. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re V.P., a Person Coming Under the Juvenile Court Law. | B310380 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDDIE P.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP03975A) |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

Appellant Eddie P. (Father) contests dependency jurisdiction and his son's removal from his custody. The court found Father and M.H. (Mother) physically abused their three-year-old child V.P. and engaged in altercations. Their conduct places V.P. at risk of serious harm. (Welf. & Inst. Code, § 300, subd. (b).)[1]

Substantial evidence supports the orders. Father has a history of domestic violence, some of which V.P. witnessed, and both parents hit V.P. with a belt. The court disbelieved Father's blanket denials. Father's refusal to acknowledge the effects of his conduct demonstrates a risk for future violence, supports jurisdiction and justifies V.P.'s removal. We affirm.

## FACTS AND PROCEDURAL HISTORY

Father's sons are V.P. (born in 2017) and V.P.'s older half sibling E., Jr. In 2016, Father was arrested for raping the mother of E., Jr.; she reported that the boy witnessed domestic violence. Dependency jurisdiction was exerted over E., Jr. from 2016 to 2019. The court terminated jurisdiction with a family law order giving Father physical custody of E., Jr., who is not named in the current petition.

In 2019, Father was arrested for battery after he grabbed Mother's hair, threw her on the floor and kicked her following an argument. Mother said Father attacked her in V.P.'s presence on prior occasions. He "would usually choke her, pull her hair and throw her to the ground." No petition was filed in 2019 because there was no pattern of neglect or abuse of V.P.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. Mother has not appealed the court's findings.

Police were called on May 19, 2020, after Mother and Father fought. Father wrested Mother's cell phone from her and threw it outside. He grabbed Mother by her hair and forearm and dragged her outside, some four or five feet, abrading her arm. Respondent Department of Children and Family Services (DCFS) obtained a removal order for V.P.

In the detention report, Mother said she and Father have a three-year history of violence "on a consistent basis." In their recent clash, they argued over Father's relationship with another woman. Father pushed Mother, who fell. He dragged her from the home and threw her phone over the balcony. Mother said V.P. did not witness the episode because he was with his maternal great-grandmother (MGGM). Mother saw Father punch E., Jr. in the chest with a closed fist and spank him with a belt. She once saw Father "thump" V.P. in the face.

Mother stayed with Father despite the abuse because she grew up without a father and MGGM encourages her "to work things out." She realizes Father "will not be changing" and she does not plan to continue their relationship. She still allows him to visit V.P. at MGGM's home.

V.P. reported that "when he is bad Mother spanks him on the butt with a belt or MGGM hits him with a shoe" and Father "takes his 'belt off his pants' and hits him on the buttocks" while V.P. hunches over a sofa, as he demonstrated for the social worker. V.P. witnessed Father fighting with and hitting Mother, and hitting E., Jr. with a belt. MGGM admitted hitting V.P. with a shoe "to scare him." Father was not interviewed because he did not return calls or make himself available.

A petition was filed, alleging that Mother and Father have a history of violent altercations in V.P.'s presence; Father pushed

3

Mother to the floor and dragged her from the home, causing injury; Mother kicked Father; Mother and Father physically abused V.P. by striking him with a belt, causing unreasonable pain and suffering; and MGGM physically abused V.P. by striking him with a shoe. On July 31, 2020, the court found a prima facie case for detaining V.P. from Father. V.P. was released to Mother, under DCFS supervision. Father, who did not appear at the hearing, was given monitored visits.

In the jurisdiction report, Mother said she and Father have had violent clashes for four years, but she is "not going back to him now." She added, "He gets violent when things don't go his way." She said, "yes, I have spanked [V.P.] with a belt in the past. He just goes outside without permission, we will find him in the kitchen cooking, he just goes wherever he wants and I have spanked him for that, and yes, I did use a belt." Mother has seen Father hit V.P. "with a belt in the past and has thumped him in the face, he hit [V.P.] once on the stairs and [V.P.] hit his eye on the stairs. [V.P.] has had a few minor bruises from his father hitting him, but his father has never been out of control in spanking him." Mother said MGGM has hit V.P. with a sandal, as punishment for going to the kitchen to cook.

V.P. was reticent to speak to the social worker. He said "no one ever hit me," amending it to "one time I got hit with a belt" on his buttocks. V.P. said Father "whopped me one day . . . just with his hand, he tried to hit me with a belt but I got away from him." As for parental violence, V.P. said he did "not see anyone hit anyone, nope, nope." V.P. said MGGM "never" hit him, then amended his answer to say she "hit me with a sandal, I was in the kitchen, I was going to cook something."

4

Father denied the events described in the police report, depicting himself as the victim of Mother, who refused to leave his house. He denied dragging her from the house or engaging in violence in front of V.P. He denied using corporal punishment, claiming he used time-outs or took toys from V.P. as punishment.

The petition was adjudicated on November 19, 2020. When Father asked the court to take judicial notice of E., Jr.'s case file, other counsel objected that they had no notice or opportunity to review that file. The court denied Father's request "because it's 4 o'clock in the afternoon and you're just bringing that to everybody's attention."

Father asked the court to dismiss the petition, denying that he harmed Mother or unreasonably disciplined V.P. V.P.'s counsel asked the court to sustain the domestic violence count and order informal supervision. DCFS argued that the parents struck V.P. with a belt "in the past," when the child was two. They take no responsibility for their inappropriate discipline of a small child, posing a risk of recurrence. Police reports show a history of parental domestic violence.

The court stated that the family needs formal supervision, observing that Father's aggression on May 19 resulted in visible injury to Mother. It was not the parents' first incident of violence and they must co-parent V.P. Services are needed to avoid recurrence because "this child is very young."

The court sustained three counts. It found V.P. is at risk of serious harm owing to the parents' history of physical altercations in V.P.'s presence; further, both parents physically abused V.P. by striking his buttocks with a belt, which was "excessive." The court dismissed the remaining counts.

At disposition, the court declared V.P. a dependent of the court, finding it would be detrimental if he were not subject to DCFS supervision. It released V.P. to Mother's custody and removed him from Father. Over the objections of DCFS and Mother, who said Father is "very violent," the court allowed unmonitored visits on condition that Father show proof of enrollment in domestic violence counseling and parenting classes. The parents cannot impose corporal punishment and must participate in a domestic violence program, parenting classes, and counseling to address case issues. Father appeals.

## DISCUSSION

### 1. Dependency Jurisdiction

We uphold jurisdictional findings " 'if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

The sustained findings require a showing that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1).) Our primary concern is a child's best interests. Courts "need not wait for disaster to strike before asserting jurisdiction." (*In re K.B.* (2021) 59 Cal.App.5th 593, 603.)

V.P. was three when this proceeding began. Special protection is given to children of tender years. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [children under age six at

6

the time of the jurisdiction hearing are of "tender years."].) Youth is a factor favoring jurisdiction in cases of physical abuse because "even a single episode of corporal punishment could have devastating consequences to the child's physical health and safety." (*In re D.B.* (2018) 26 Cal.App.5th 320, 331–332 [jurisdiction lies for a child at the "terrible twos" developmental stage after the parents beat and injured his six-year-old brother with a belt, posing a substantial risk of harm to the toddler].)

Father contends that the parental conduct did not amount to physical abuse or give rise to an inference that V.P. was at a substantial risk of such abuse in the future. The sustained allegation was that both parents struck V.P.'s buttocks with a belt, which was excessive and caused unreasonable pain and suffering. V.P. disclosed that Father uses a belt to strike his buttocks while he hunches over a sofa; V.P. also reported seeing Father hit E., Jr. with a belt. Mother said Father hit V.P. with a belt, "thumped him in the face," and caused V.P. to hit his face on the stairs. V.P. sustained bruises from Father's beatings.

Father denied any physical abuse. However, the standard of review requires us to consider if *any* evidence—contradicted or uncontradicted—supports the court's findings. V.P.'s statements, standing alone, constitute substantial evidence. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [evidence from a single witness is sufficient to support findings].) Mother admitted that she and Father hit V.P. with a belt. The court could infer that V.P.'s initial frank statements to DCFS at detention were credible but that V.P. was later pressured to deny seeing violence or being hit.

Father contends that hitting V.P. with a belt does not cause serious harm justifying jurisdiction. Serious physical harm "does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury." (§ 300,

7

subd. (a); see *In re D.M.* (2015) 242 Cal.App.4th 634, 640 [this proviso applies to all parts of section 300].)  The court could find it neither reasonable nor age-appropriate to strike a two or three-year-old child with a belt.  V.P. could not articulate what behavior merited use of a belt and Father shed no light on the subject because he denied everything.  Mother said she struck V.P. with a belt because he went outside or into the kitchen without permission.  The court legitimately concluded that this was an "excessive" response to normal behavior at V.P.'s age.

Father cites *In re D.M., supra,* 242 Cal.App.4th at page 637, in which a mother spanked her children's buttocks with her bare hand or sandal, but not hard enough to cause bruising.  A better analogy is *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438, in which a parent struck a three-year-old with a belt, leaving bruises and justifying jurisdiction.  The court considered all the evidence and found the parents' punishment of V.P. excessive.  It implicitly found that three-year-old V.P. did not or could not cause enough trouble to warrant being hit with a belt.

The risk of future harm to V.P. is magnified by Father's refusal to accept responsibility.  His history of violence suggests inability to manage his anger, with manifestations of aggression that include thumping V.P.'s face and battering Mother.  Father's indifference to his actions is cause for concern.  "One cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)

Jurisdiction is justified by substantial evidence of domestic violence.  " ' "Children can be 'put in a position of physical danger from [parental] violence' [by], 'for example, . . . wander[ing] into the room where it was occurring and be[ing] accidentally hit by a thrown object, by a fist, arm, foot or leg' " ' [Citation.]  For that

reason, a juvenile court may invoke jurisdiction under section 300, subdivision (b), even if a child has emerged physically unscathed from an instance of domestic violence." (*In re L.O.* (2021) 67 Cal.App.5th 227, 239 (*L.O.*); *In re R.C.* (2012) 210 Cal.App.4th 930, 943 [affirming jurisdiction though the child who saw an altercation "was not physically hurt"].) Past violent behavior is the best predictor of future violence. (*L.O.,* at p. 238.)

Father was arrested for battery in 2019, when he grabbed Mother's hair, threw her on the floor and kicked her. One year later, he grabbed Mother's hair and dragged her four or five feet, causing injury. Mother described a history of violence "on a consistent basis." Father has attacked Mother in V.P.'s presence. It is immaterial that no fights were reported after DCFS intervened; unsurprisingly, they abstained from fighting while under supervision. Even if Mother plans to end the relationship, Father will continue to see his son. "Accordingly, Father will likely encounter Mother in [V.P.]'s presence in the foreseeable future." (*L.O., supra,* 67 Cal.App.5th at p. 240; *In re R.C., supra,* 210 Cal.App.4th at p. 940 [when parents have children together " '[t]hey're still going to be interacting with each other' "].)

Father's refusal to address his troubling behavior points to the need for dependency jurisdiction. "Father's failure even to acknowledge his past violent behavior, let alone express remorse or show any insight regarding it, exposes [the child] to a risk that he will once again attack Mother in [the child's] presence." (*L.O., supra,* 67 Cal.App.5th at p. 240.) " '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' " (*In re A.F.* (2016) 3 Cal.App.5th 283, 293; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 601 [parent's denial of violence increases risk].) Substantial evidence supports the conclusion that Father is

unlikely to modify his behavior without supervision. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 [a person found to have perpetrated abuse and who vigorously denies it, is likely to resist services needed to effect behavioral changes to ensure the child will not be at future risk].)

Father emphasizes that the court dismissed a petition involving E., Jr. The dismissal of E., Jr.'s case, without prejudice, does not exonerate Father. Nine-year-old E., Jr. denied that Father hit him. By contrast, V.P. told DCFS Father hit him with a belt and he saw Father hit Mother. V.P. is especially vulnerable to abuse. An older child "may be able to protect herself against corporal punishment or call for help. . . . Corporal punishment presents a far greater risk of injury—and serious injury—to a toddler." (*In re D.B., supra,* 26 Cal.App.5th at pp. 332–333.) The decision to dismiss E., Jr.'s case does not affect V.P.'s case.

### 2. Disposition

Father contends that the disposition must be reversed because there is no basis for jurisdiction. As discussed above, the record supports jurisdiction. He also argues that removal was improper because the court failed to follow proper procedures and no substantial evidence supported it. Alternatively, he argues that V.P.'s removal was unnecessary because jurisdiction alone is enough and DCFS could have implemented "a plan of strict supervision" with regular, unannounced visits to mitigate any risk of harm to V.P.

The court may remove a child from parental custody upon clear and convincing evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor." (§ 361, subds. (c)(1), (d).) The court must

state the facts on which it bases its decision to remove the child. (§ 361, subd. (e).) We examine the entire record for substantial evidence showing a high probability that the court found facts supporting removal. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012; *In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

The court failed to state the facts underlying its removal decision. The error is harmless because it is unlikely to have changed the outcome or caused a miscarriage of justice. (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218; *L.O., supra,* 67 Cal.App.5th at p. 247.) Substantial evidence shows Father denies his lengthy history of violence toward family members, despite arrests for rape and battery on two intimate partners. Removal is necessary when the "inference from his denial [of domestic violence] is that he is less likely to change his behavior in the future." (*In re V.L.* (2020) 54 Cal.App.5th 147, 156–157.)

There is no reasonable means to protect a child without removal if the child "would not be safe . . . until [the father] acknowledged the inappropriate nature of his parenting techniques and disciplinary methods." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 918.) Father lacks insight into his behavior, causing the court to condition visits on his enrollment in domestic violence and parenting classes. The court perceived that Father poses a substantial danger to V.P.'s physical health, safety, and well-being and properly removed V.P. from Father's custody.

11

## DISPOSITION

The jurisdiction and disposition orders are affirmed.

**NOT TO BE PUBLISHED.**

                                        LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

12